Eugene FRANKLIN, Plaintiff-Appellee,

v.

FIRST MONEY, INC., d/b/a E–Z Finance Plan, Defendant-Appellant,

United States of America, Plaintiff Intervenor-Appellee.

No. 77–1744.

United States Court of Appeals,
Fifth Circuit.

June 21, 1979.

David S. Willenzik, New Orleans, La., for First Money, Inc.

Mark Murov, New Orleans, La., for plaintiff-appellee.

Ford J. Dieth, Asst. U. S. Atty., New Orleans, La., John H. Shenefield, Asst. Atty. Gen., Charles R. McConachie, Chief, Antitrust Div., Dept. of Justice, Washington, D. C., for plaintiff intervenor-appellee.

Before THORNBERRY, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Plaintiff brought this truth-in-lending action against defendant alleging failure to make required disclosures of the amount or method of computing the amount of a default charge payable in the event of late payment. 12 C.F.R. § 226.8(b)(4); 15 U.S. C.A. § 1640(a). Defendant contends (1) the charge was not a default charge within the meaning of the federal regulations, (2) the district court erred in failing to recognize defendant's good faith defense, 15 U.S.C.A. § 1640(f), and (3) the statute and regulations are unconstitutional. Holding that the district court correctly held against these assertions on summary judgment, we affirm the decision of the district court, portions of which appear in two published opinions, *Franklin v. First Money, Inc.*, 414 F.Supp. 21 (E.D.La.1976) (summary judgment rendered for plaintiff on merits of truth-in-lending claim and defendant's constitutional challenge severed) and *Franklin v. First Money, Inc.*, 427 F.Supp. 66 (E.D.La.1976) (defendant's motion for summary judgment on constitutional challenge denied).

In 1974 plaintiff, Eugene Franklin, entered into an installment loan agreement with defendant, First Money, Inc., for $480.00 including precomputed interest. The disclosure statement contained the following clause:

DEFAULT CHARGE: If this consumer loan is precomputed, and in the event any installment shall not be paid in full within 10 days after it becomes due, debtor agrees to pay an amount not exceeding the greater of (A) 5% of the unpaid amount of the installment but not exceeding $5.00, or (B) the deferral charge that would be permitted to defer the unpaid amount of the installment for the period it is delinquent.

The failure to disclose the amount that could be charged upon nonpayment under clause (B) is the core of this case. The federal regulations promulgated pursuant to the Truth-in-Lending Act require disclosure of a "default charge" by showing either the amount or method of computing the amount at the time of the loan. 12 C.F.R. § 226.8(b)(4) provides:

(b) *Disclosures in sale and nonsale credit.* In any transaction subject to this section, the following items, as applicable, shall be disclosed:

. . . . .

(4) The amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments.

Defendant contends that part (B) of its disclosure statement must be read as a "deferral charge," not a default charge. If it is a deferral charge, it would then fall within the scope of 12 C.F.R. § 226.8(*l*),[1] which requires disclosure only at the time of deferral, not at the time the original contract is signed. *See* Informal Staff Opinion of the Federal Trade Commission (10/26/69), 5 C.C.H. Consumer Credit Guide ¶ 30,331; *Kenney v. Landis Financial Group, Inc.*, 4 C.C.H. Consumer Credit Guide ¶ 98,937

---

1. 12 C.F.R. § 226.8(*l*) provides:

    (*l*) *Deferrals or extensions.* In the case of an obligation other than an obligation upon which the amount of the finance charge is determined by the application of a percentage rate to the unpaid balance, if the creditor imposes a charge or fee for deferral or extension, the creditor shall disclose to the customer

    (1) The amount deferred or extended;
    (2) The date to which, or the time period for which payment is deferred or extended; and
    (3) The amount of the charge or fee for the deferral or extension.

(N.D.Iowa, No. 71–C–32–CR, Nov. 1, 1973). Defendant made no deferral and imposed no charge under this clause.

Neither the Act, the Regulations, nor controlling judicial precedent define the terms "default" or "deferral." The district court held that any charge that can be unilaterally imposed upon nonpayment of a loan is a default or delinquency charge within the meaning of § 226.8(b)(4). A deferral charge, then, would be a charge that cannot be made without the consent of the debtor. Although the statute does not use the terms "consensual" or "nonconsensual," these terms are necessary elements of a meaningful distinction between a default charge and a deferral charge.

In its decision on the merits of the truth-in-lending claim the district court stated:

The default provision [Section 226.-8(b)(4)] deals with disclosures that must be made to a borrower regarding actions that may be taken by the creditor unilaterally upon the borrower's default. It is not confined to the action that a creditor may take to accelerate the balance due or sue on the obligation, for it covers charges "payable in the event of late payments." The deferral charge regulation, Section 226.8(*1*), appears to relate to disclosure charges that are made in the event of a mutually agreed upon extension or deferral of one or more installments due on a loan. . . .

. . . If the charge is one that the creditor may unilaterally impose at the creditor's will, upon a default—that is if the creditor may treat any default as occasion for a charge—then it is evident the charge is not truly a consensual deferral charge but a default charge.

The language used by the disclosure form used in this case indicates that the defendant considered this a default charge because the proviso is contained in the default charge portion of the disclosure statement. It does no good to argue that this is not a "default . . . or similar charge . . . because, when it is imposed, the defendant does not treat the transaction as a default but merely exacts the charge for deferring payment." That of course begs the question. It is the defendant who makes the election whether to treat the borrower's tardiness as a default or not. It has the right to treat the delayed payment as occasion to exact charge (B). Thus, it may exact a charge that it unilaterally decides to charge and that it had not disclosed at the time the plaintiff decided to enter into the loan commitment.

The purpose of the deferral disclosure requirement is to permit the borrower to determine whether or not he wishes to avail himself of the deferral. It gives him a chance to determine the cost of deferment, and whether he wishes to bear this cost. If he is not to have a choice, then the charge must be disclosed at the inception of the loan. If he has no option with respect to whether or not he will bear the cost, and if he does not know, at the time the loan is made, that the cost may be imposed upon him, then he will never be informed of the cost of being late until he already owes the charge.

414 F.Supp. at 22–23.

■ On appeal defendant contends that because the clause at issue here is modeled closely upon Louisiana law which permits a deferral charge, the federal courts should construe it to be a deferral. This argument must be rejected for two reasons: first, the fact that a deferral is allowed under state law has no bearing upon whether it must be disclosed under federal law; second, the section of the Louisiana Code upon which defendant has drawn is entitled "Maximum delinquency charges," making it apparent that in this context the "deferral charge" in fact becomes a default or delinquency charge under state law, as well. La.Rev. Stat.Ann. § 9:3525 (West Supp.). Maximum deferral charges are treated in a separate section. La.Rev.Stat.Ann. § 9:3526 (West Supp.).

Defendant also contends that it is entitled to rely upon the defense of "good faith conformity" to a Federal Reserve Board interpretation. 15 U.S.C.A. § 1640(f).[2] *See Charles v. Krauss Co.*, 572 F.2d 544, 549 (5th Cir. 1978). Defendant is not entitled to assert a good faith defense in the face of the clear language of the statutory provision regarding disclosure of default charges. That defendant chose to use a word such as "deferral," replete with other meanings, to refer to what was in fact a default charge does not entitle defendant to claim uncertainty about the meaning of the regulations.

Defendant has also raised a variety of constitutional challenges, alleging that a section of the Truth-in-Lending Act, 15 U.S.C.A. § 1639(a)(7),[3] and two sections of the regulations, 12 C.F.R. §§ 226.8(b)(4) & 226.-8(*l*), are void for vagueness and that another section of the Act, 15 U.S.C.A. § 1640(a),[4] imposes "punitive-type penalties" without requiring proof of actual damages in violation of the due process clause. U.S.Const. Amend. V. The district court properly rejected these challenges for the reasons stated in *Franklin v. First Money, Inc., supra*, 427 F.Supp. at 67–72.

AFFIRMED.

---

**2.** 15 U.S.C.A. § 1640(f) provides:

(f) No provision of this section or section 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

**3.** 15 U.S.C.A. § 1639(a)(7) provides:

**Consumer loans not under open end credit plans—Required disclosures by creditor**

(a) Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

. . . . .

(7) The default, delinquency, or similar charges payable in the event of late payments.

**4.** 15 U.S.C.A. § 1640(a) provides:

**Civil liability—Individual or class action for damages; amount of award; factors determining amount of award**

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, or (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or

(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.