**In re Bonnie Renee JACOBSEN, Debtor.**

**HOUSEHOLD FINANCE CORPORATION,**
**Plaintiff-Appellant,**

v.

**Bonnie Renee JACOBSEN,**
**Defendant-Appellee.**

BAP. No. NC–81–1072–VGL.

Bankruptcy No. 6–80–0459–M.

Civ. No. 80–4081–SW.

Adv. No. 800174.

United States Bankruptcy Appellate Panels, of the Ninth Circuit.

Argued Sept. 17, 1982.

Decided March 11, 1982.

Charles L. Mossina, Norris & Norris, Richmond, Cal., for appellant.

No appearance for appellee.

Before VOLINN, GEORGE and LASAROW, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge.

Appellant, a Chapter 13 creditor, contends that it should be relieved of the automatic stay of § 1301(a) so that it may proceed, pursuant to § 1301(c)(2), to sue a co-obligor of the debtor for so much of its debts as is not provided for by the plan (this was a 15% plan). The court below held that, during the life of the plan or until the Chapter 13 case was closed, dismissed, or converted, the creditor was stayed from suing the co-obligor for recovery of the 85% or whatever balance was not paid under the plan. We REVERSE.

## I.

The debtor filed a plan proposing to pay 15% of the claims of her unsecured creditors. Trudy M. Waldron was a co-maker on the note evidencing the obligation incurred by debtor to appellant which has filed an unsecured claim for $1,764.53. Thereafter, appellant filed a complaint to modify stay seeking relief from the stay of § 1301(a) so

that it could proceed to collect the 85% portion of the debt not provided for by the co-maker. The debtor noted the matter for hearing. The court below, after hearing the matter, issued a Memorandum Decision (July 24, 1980) and Judgment (September 5, 1980) dismissing appellant's complaint.

## II.

Thereafter, appellant's appeal followed a somewhat unusual course. At the time, jurisdiction of the Bankruptcy Appellate Panels had not reached the Northern District of California. Appeal was therefore taken to the District Court on the judgment of September 5, 1980. Appellant's argument on appeal addressed itself to the principal issue presented in the instant appeal. The debtor/appellee contended, *inter alia*, that appellant had misstated the case because, in fact, a plan of 100% had been proposed. The District Court, thereupon, on February 20, 1981, entered an Order of Remand, stating:

> In light of this confusion and the meager record before this court, IT IS HEREBY ORDERED that this case is remanded to the Bankruptcy Court for clarification as to the judgment entered by the Court. If appellant is to receive full payment the action should be dismissed, but if no amended judgment has been filed judgment should be entered in favor of appellant.

The foregoing reference to an amended judgment was based on debtor/appellee's representation in her brief on appeal to the District Court that

> [i]t [the judgment appealed from] therefore does not fully and accurately reflect the judgment of the Court. The Court's judgment on the facts stated by appellant would be in error. But the facts as they presently exists [sic.] provide that appellant is to receive 100%....

> . . . .

### Conclusion

On the basis of the foregoing, appellee respectfully requests that this Court sus-

tain the ruling of the Bankruptcy Court or in the alternative remand this matter to the Bankruptcy Court for clarification as to the judgment entered by the Court with instructions to dismiss the action if appellant is to receive payment in full or enter judgment in favor of appellant if debtor does not propose to pay appellant in full.

## III.

On March 16, 1981, the trial court entered its "Judgment After Remand." It recited, *inter alia,* entry of the judgment of September 5, 1980, further stating: "No record of an amended judgment can be located." The Court then reiterated the reasons for dismissal of appellant's complaint and again dismissed it. Appellant, on March 25, 1981, filed a Notice of Appeal to District Court. By then, the jurisdiction of the Bankruptcy Appellate Panels had been extended to the Northern District of California. Appellant concluded that the appeal should be prosecuted *de novo* before the Appellate Panel. While cogent argument could be made that the law of the case had been set before the District Court and that its remand order of February 20, 1981, warrants reversal of the trial court, we are of the view that, in the interest of conserving efforts of the courts and parties, this Panel should proceed with consideration of the appeal on its merits.

## IV.

11 U.S.C. § 1301(c)(2) states that the stay insulating a co-debtor from suit shall be inoperative to the extent that "the plan filed by the debtor proposes not to pay such claim...."

The foregoing language is unqualified. There is no limitation on the creditor's right to sue the co-debtor for the amount not provided for *by the plan.* There is no requirement that suit be deferred while the debtor pays under the plan during a period of years. *In re Holmes,* 9 B.R. 454, 4 C.B. C.2d 259 (Bkrtcy.D.C.).

The foregoing conclusion is consistent with the legislative history of § 1301(c)(2). "The court must grant relief to the extent that the debtor does not *propose* to pay, under the plan, the amount owed to the creditor." H.R.Rep.No.95–595, 95th Cong., 1st Sess. 426 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6382 (Emph. supp.). It would make little sense to defer such relief when it is known that the creditor will never receive the unprovided-for amount, under the plan, from the debtor. To put it otherwise, the debtor has in effect stated the respective dimensions of his liability and that of the co-maker. Section 1301(a)(2) provides the creditor with freedom to pursue, to the latter extent, its claim against a co-debtor.

The relief sought by appellant should be granted. Accordingly the judgment of September 5, 1980, is REVERSED.